(Decided June 19th, 1877.)

---

THE LIGHT STREET BRIDGE COMPANY, AUSTIN PHELPS, DANIEL A. JENKINS, and others *vs.* MICHAEL BANNON, Administrator of FRANCIS LAWRENCE, JOHN SHARP, and others.

SPECIFIC PERFORMANCE OF CONTRACTS.

*Equitable title to land—Contracts to purchase—Purchasers without notice—Certainty of averment and sufficiency of proof—Discovery—Answers in Chancery—Parties.*

Where application for the specific performance of a contract for the purchase of land is made by the purchaser, or some one in privity with him, having knowledge of the terms of the contract, Courts of equity require that the terms of the contract shall be fully and particularly stated, so that it may

Light Street Bridge Co., *et al. vs.* Bannon, Adm'r, *et al.*

appear to the Court to possess all the elements of fairness, mutuality and certainty in all its parts.

But such strictness is not required as to the averments in the bill where the complainants are strangers to the contract, and have not full and particular knowledge of its terms; and especially where the defects in the averments may be supplied by proof.

Where a bill is filed for the sale of an equitable interest in land, and it appears that since the date of the contract creating such equitable title, the land has been sold, the purchaser thereof should be made a party to the suit in order that his rights may be protected.

APPEAL from the Circuit Court of Anne Arundel County, in Equity.

In this case the Light Street Bridge Company, and others, creditors of Francis Lawrence, of Anne Arundel County, deceased, filed a bill for the sale of certain real estate to pay the debts of said Lawrence, alleging the insufficiency of his personalty for that purpose. It was alleged in the bill and the proof showed that Lawrence had merely an equitable title to the land sought to be sold, which he had acquired under a purchase from a certain Greenbury P. Sappington, and a discovery was sought from Sappington as to the terms of said purchase, what amount of the purchase money had been paid, and what part, if any, was unpaid, &c.

Sappington answered the bill, to the sufficiency of which answer exceptions were filed and sustained, and an order was passed requiring Sappington to make a better answer by a day named, before which time, however, Sappington died.

An amended and supplemental bill was filed by the complainants, and on suggestion of the death of Sappington, intestate, his widow and heirs-at-law were made parties defendants to the suit.

The cause proceeded to hearing, when, after argument, the Court dismissed the bill with costs, upon the ground that " there was a failure to make out a case entitling the

complainants to a specific execution of the alleged contract, both for the want of certainty of averment and because of a failure and insufficiency of proof."

From this decision of the Court and the order thereon passed, the complainants appealed.

The facts are further stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BRENT, ALVEY and ROBINSON, J.

*John Q. A. Jones, Frank H. Stockett* and *W. H. Tuck,* for appellants.

The appellants will contend that this opinion and decree were erroneous, and that they were entitled to a decree for the sale of the real estate mentioned in the proceedings for the payment of their debts by reason of the insufficiency of the personal estate of said Lawrence for that purpose.

This is a proceeding by the creditors of Francis Lawrence, deceased, for the sale of his real estate for the payment of his debts, and the case made by the original and supplemental bills has a *threefold* aspect.

1. It seeks to have the real estate of Francis Lawrence, deceased, sold for the payment of his debts by reason of the insufficiency of the personal estate of which he died possessed.

2. It seeks on behalf of the creditors of the said Francis Lawrence, who are the complainants, that the outstanding legal title to said real estate, which was in one Greenbury P. Sappington, might be sold.

3. And in aid of the relief asked for under the second head, it calls for *a discovery* from said Sappington as to the terms of purchase upon which Lawrence had obtained the land, alleged to have been purchased from him, what payments had been made on the same, and what part of the purchase money, if any, remained unpaid.

1st. To entitle the creditors to a decree under the *first* head, it was essential that they should prove the insufficiency of the personal estate of Lawrence for the payment of his debts, and this was amply done.

The proof of such insufficiency is, however, conceded by the Court below, and there is no contest as to this point.

2nd. The real estate so sought to be sold, it is alleged, was purchased by Lawrence of his father-in-law, the said Greenbury P. Sappington, a number of years before the death of said Lawrence, who thereupon entered into the possession of the same, which he retained up to his death, and paid, as it is averred, the whole purchase money, but inasmuch as this sale was *by parol*, the particulars of which were known only to the *two contracting parties*, the complainants, as creditors of Lawrence and strangers to the contract, seek from the only surviving party, Sappington, *a discovery* as to the terms of this sale, and what part of the purchase money had been paid under it.

Now it will be observed that this is not a bill asking for the *specific execution* of a *contract*, technically speaking, for it avers that the contract had been *executed*, the sale *made* and *perfected* by the payment of the *whole* purchase money, and that only the dry legal title remained in Sappington, which they seek to divest for the benefit of Lawrence's creditors by aid of this discovery from Sappington.

What the complainants had therefore to establish was the fact of a *sale*, and such compliance with the sale by payment of a part or the whole of the purchase money, and the *possession* under *such sale*, as would give to Lawrence a title to or right in the land, which would render it liable to the claims of his creditors.

It is therefore submitted, that the principles of law which govern Courts in cases for the specific execution of contracts, do not apply to this case at all, or if they do, only in a very modified degree, and still less would such.

strict rules and principles be applicable as in cases where vendors or vendees seek the aid of the Court.

It is conceded that in such cases the Courts require that the *very* contract sought to be enforced must be *arerred* in the bill and *proved*, and it will not do to prove *some* contract, and for the very obvious reason, because as between *parties* to the contract knowledge of the *very* contract sought to be enforced must be possessed, or it would be no *agreement;* but in the case of a stranger to the contract, as it were, but who had acquired an interest in its execution, the circumstances and the law applicable to it are very different, and address themselves to a very different consideration by the Court.

Even the right to a specific execution of a contract is not as a matter of course, but addresses itself to the sound discretion of the Court, and the remedy is given or withheld according to the particular circumstances of each case.

Now what in brief are the facts and the equity in this case?

It is alleged that Lawrence in his life-time was the owner of a certain real estate called "Finland," containing about 100 acres ; that this property he purchased from Sappington, entered into the possession of it, paid the whole purchase money, and died seized of it, but obtained no deed for it, so that he held no more than the equitable title.   It will not be denied, that if Lawrence *purchased* this property for $500 or $5000, and paid on account of such *purchase* $5.00 or $500, the land became *his* property, and the *unpaid* purchase money, if any, belonged to Sappington ; and if from any cause such land became worth $50,000, Lawrence alone would obtain the benefit of this appreciation, and Sappington could only claim the unpaid purchase money.   Such purchase, therefore, would vest such title in Lawrence, as would entitle his *creditors* to the sale of that for the payment of their debts, and would

give them the right to demand from Sappington a convey-
ance of said land on tendering him whatever of the pur-
chase money remained unpaid to him.   All that the credi-
tors therefore would have to do would be to *prove* the
*purchase*, without any regard to what was the *amount* of
the purchase money, or what part of the same had been
*paid*, to entitle them to a sale of all the right and interest
of Lawrence in the land.   Have they not done this most
amply?   They sought a *discovery* from Sappington, the
only surviving party to the contract, and with whom
alone rested its terms.   He refused to give that informa-
tion.   It is true he did file what he called an answer to
the original bill, but it was excepted to, and the excep-
tions sustained ; and such an answer as that the Courts
say " *is no* answer," and cannot raise any defence.   *Rich-
ter, &c. vs. Pue*, 9 *Gill & John.*, 475.

· To the amended and supplemental bill, though sum-
moned, he would not answer, and after his death the cause
was revived against his heirs-at-law, and the adults re-
fusing to answer an interlocutory decree was had against
them, and the minors answered by their guardian *ad litem*,
so that all the parties were before the Court.

What remained for the complainants to do, and what
could they do to prevent the defeat of justice, but to supply
by evidence, proof of the *sale*, which they had failed to
obtain by reason of the *fraud* or *wrong* of the vendor in
refusing the discovery sought from him ?   Have they not
done this so as to leave no doubt that Lawrence did *pur-
chase* the land ? did under *such purchase* have possession
of the land up to the time of his death ? and did make
payments on account of the purchase money, if he did not
pay the whole of it?   If this be so, can it be that the
creditors of Lawrence are to lose all benefit of their debtor's
payments on said land as a security for their debts ?

Again, though it is conceded that in the case for a tech-
nical specific execution of a contract, the bill must set out

such a contract as is proved, and one mutual in its obligation, and not merely *some contract* for the sale of the land, yet even there the complainant is not required to aver the *whole contract*, unless it be clear that he knew what it was in all of its terms, but he may set out so much of the contract as he recollects, and call on defendant to supply by a discovery such as is not recollected. In such a case, if defendant so supplies the other parts of the contract, so as to furnish the Court with a complete contract, and which does not *contradict* the one set up by the bill, the Court will undoubtedly enforce the contract so *agreed on*, or if defendant sets up a *different* contract from that averred, and complainant *accepts* it as the correct contract, the Court would *enforce* it, as where the contract was in writing, and left with one of the parties, and the other party files his bill for *its* specific execution, and sets out a contract quite different in its terms, and the defendant by his answer denies there was any such contract, but files the agreement which he avers was the contract, and the complainant *accepts* it, there the Court will decree its compliance without amendment of the pleadings. (*Story's Eq.*, sec. 77, *a.*) What is meant is, that the contract averred must not contradict that which is proved, and must be so *complete* by the *averment and proof*, as to enable the Court to *enforce* a consistent *agreement*. Can it make any difference in the right to relief, whether the contract is made to appear by the admissions in the answer, or by proof on the *failure* to answer? By the admissions of the defendant *to the Court*, or by his admissions to others which are clearly proved? In the present case, there is no *denial* of the contract set up, for there is no *answer;* (9 *Gill & John.*, 475,) no *contradictory* contract stated or attempted to be proved, and the contract which the creditors *prove*, does not *contradict* nor is *inconsistent* with the one averred. The proof only supplies the *hiatus* in the bill, and by evidence of a contract which it completes,

and which is in no respect at *variance* with the one averred, and is not only consistent with it, but by full and unquestioned evidence, brings before the Court such proof of a completed sale and delivery of possession of the land in controversy by Sappington to Lawrence, that it would be a reflection on justice and the jurisdiction of a Court of equity to reject.

1st. Do the averments of the bills in this cause, and the proofs, make such a case as appeals to the Court for its interposition? Is the contract, as alleged and proved, fair, just, reasonable, equal in all its parts, mutual and founded on an adequate consideration? If so, then we are entitled to a decree for specific performance. *Seymour vs. Delancy,* 6 *Johnson Ch. Rep.,* 229, *et seq.; Tyson vs. Watts,* 1 *Md. Chan. Dec.,* 13; *Shepherd vs. Bevin, et al.,* 9 *Gill,* 40 to 45 ; 1 *Gill & Johnson,* 502 ; 1 *Story's Equity,* secs. 762, 763, 764, 766, (10*th Ed.;*) *Semmes vs. Worthington,* 38 *Md.,* 303 ; *Ellicott vs. White,* 43 *Md.,* 145 ; *Duvall vs. Myers,* 2 *Md. Ch. Dec.,* 401.

2nd. A parol contract about land, possessing the elements of fairness, definiteness, mutuality and adequacy of price, which has been so far performed, as to free it from the Statute of Frauds, as by putting the vendee in possession, which is *referable* to the alleged contract, will be performed by a Court of equity. *Shepherd vs. Bevin, et al.,* 9 *Gill,* 44 *and* 45 ; 2 *Story's Equity, sec.* 762 ; *Ches. & Ohio Canal Co. vs. Young,* 3 *Md.,* 490 ; *Simmons vs. Hill,* 4 *H. & McH.,* 258.

3rd. Such a contract will be decreed against heirs-at-law, or legal representatives of a deceased party, and the assignees of contracting parties, in *favor of heirs-at-law, or assignees for value. Morris vs. Harris,* 9 *Gill,* 19, *et seq.; Stoddert vs. Bowie, Executor,* 5 *Md.,* 18, 34 *and* 35 ; *Spence's Equi. Jur. of Ct. of Chan.,* 2nd *vol.,* 287, and authorities there cited and examined.

4th. Conceding that in every respect we have presented such a case as Courts of equity require before decreeing

specific execution, are the complainants *ex justitia*, entitled thereto?

Had Lawrence died seized of the legal title to "Finland," as he was of the equitable, his creditors could have *demanded*, upon showing the insufficiency of his personal estate, to have, under a creditors' bill, a decree for the sale of his realty to discharge his indebtedness.

His equitable rights to real property are equally as liable to his creditors as his legal. *Pub. Gen. Laws*, 1 *Code, Art.* 83, *sec.* 1; *Union Bank vs. Poulney*, 8 *Gill & Johns.*, 325; *Lewis vs. Levy*, 16 *Md.*, 85.

5th. Payment of the purchase money for the tract of land, "Finland," by Lawrence to the vendor, Sappington, created a charge upon it, and implied a trust, which enured to Lawrence's heirs and creditors, which a Court of equity can, and will enforce, for their benefit, and that is what we are seeking. *Rolleston vs. Moreton*, 1 *Dr. & W.*, 195; *Legard vs. Hodges*, 1 *Vesey, Jr.*, 477, which was reheard in 4 *Bro. C. C.*, 421; *Perry on Trusts, sec.* 122; *Johnson vs. Johnson*, 42 *Md.*, 196–7; *Smoot, et al. vs. Rea & Andrews*, 19 *Md.*, 405; 1 *Madd. Chan*, 363; 1 *Story's Equity, section* 772, (10th *Ed.*)

*A. B. Hagner* and *James Revell*, for the appellees.

1st. The amended and supplemental bill was filed against Greenbury P. Sappington *alone*. No process was asked in it against the widow, administrator or heirs-at-law of Lawrence, and no *subpœna* was ever issued against or served upon either of them. Upon the death of Greenbury P. Sappington, the suit was renewed against his widow and heirs-at-law, but the widow's children and personal representatives of Lawrence, were still omitted as parties.

To a bill filed for the sale of real estate in aid of the personalty, the administrator, widow and representatives of the deceased are essential parties, and the amended and

supplemental bill in this case should have been dismissed or held for amendment on this ground.

2nd. There was no sufficient proof of the sufficiency of the personalty of Lawrence.

The administrator was omitted as a party, and has never admitted any such insufficiency, and the only claims filed when the evidence was taken in April, 1876, or when it was returned in July, 1876, were these magistrates' judgments of the Light Street Bridge Company, amounting to $216.07, and a magistrate's judgment of Weller, for $12.75, amounting altogether to $228 82; whereas, the balance due by the first account of the administrator of Lawrence is shown to be $279.54.

The judgments of Jenkins, Kelley and Mountgarrett, although placed in the record in advance of proceedings which took place in *March*, 1876, were never filed under the commission, and were not in fact placed in the case until 25th October, 1876, three months after the commission was returned.

Of course claims filed under such circumstances could not avail in such a proceeding, and especially against infants. *Watkins vs. Worthington*, 2 *Bland*, 509.

If, therefore, the case was regular in other respects, no decree could pass for a sale upon such a state of the proofs and pleadings.

But we respectfully insist, that the grounds taken in the opinion of the Court below, are conclusive against sustaining the bill. If Lawrence himself had filed a bill against Sappington with such vague averment, and though fully sustained by proof, no equity Court could have decreed a specific execution.

The law upon the subject is perfectly well settled.

To induce a Court of equity to decree specific execution of a parol contract concerning lands—

1st. The alleged agreement must appear by the averments in the bill to have been certain and definite in its terms.

It is not enough that the Court may believe there was *some* contract, but it must appear precisely *what* contract is relied upon.

2nd. The acts of part-performance relied upon must be exclusively referable to the *contract alleged*, and must be established by clear and satisfactory proof.

3rd. They must be acts prejudicial to the party relying upon them, and incapable of compensation or redress at law.

4th. And a decree for specific execution of the agreement is not a matter of absolute right in the party, even when the foregoing requirements have been fulfilled, but it is wholly in the sound discretion of the Court.

And no Court of equity will decree specific performance, unless it shall appear that the agreement alleged and proved was fair, just, reasonable, *bona fide*, certain in all its parts, and *mutual.* *Reese vs. Reese,* 41 *Md.,* 554.

Neither the allegations in either bill, nor the proof, fulfil these requisites.

The *date* of the alleged agreements, the *quantity of* the land, the *price, the terms of payment,* and the *length of possession,* are all stated vaguely in the amended bill, and the witnesses differ from the averments and from each other.

Sappington himself denied it, and the mortgage relied on, shows that Lawrence, in October, 1864, signed it, "for the purpose *of relinquishing* any claim he might have," &c., "by reason of contract, of purchase or otherwise." His surrender of the land is thus explained clearly.

There never was a decree passed for specific execution of a parol contract concerning land since the passage of the Statute of Frauds, upon such vague averments and insufficient proof.

If therefore the bill were filed *solely* to procure a specific performance, it seems certain it would have been dismissed.

Is there any reason why it should be sustained when filed, as it is insisted, in the threefold aspect of creditors' bill, bill for discovery and bill for specific performance?

We respectfully insist that this multiciplicity of objects injures, rather than strengthens the appellant's case.

The power to decree a sale of real estate, in aid of the personalty, is given by the Code, Art. 16, sec. 126, "where any person dies, leaving any real estate in *possession, remainder or reversion,* and not leaving personal estate sufficient to pay his debts," &c., "the Court may decree a sale" "*of the real estate of such person,*" &c.

This gives no authority to decree a sale of an unascertained claim of a party which might possibly be enforced against real estate in possession of another.

The decree is to pass "on a suit instituted by any of the creditors" of the person whose land is to be sold, and they must sue in the case *in their character of creditors of the insolvent,* and not in the quality of voluntary representatives of *the heirs* of the deceased, and undertaking *in their behalf* to vindicate the title of the deceased to the land in question. In fact the representatives and widow of Lawrence are not parties at all to the pending proceeding, since the amendment, certainly not as complainants.

On the other hand, a bill for a specific performance should either have been preferred by *Lawrence himself,* or by his *heirs-at-law* and representing *him.*

If Lawrence were living, he would be required to sue, and upon his death, those upon whom, by inheritance, his title to the land descended, would be necessary complainants.

But if Lawrence or his heirs had sued, it could scarcely be contended that the specific performance would have been decreed upon such allegations and proof.

The *creditors* of Lawrence can have no higher or other claim than he had to specific performance, and it is impossible to understand how the fact that they attempted

to join this application to one entirely different, can absolve them from the requirements imposed upon all persons who invoke this extraordinary jurisdiction assumed by Chancery Courts, to render nugatory the positive declaration of the Statute of Frauds.

The remark of the Court below, that if Lawrence paid any money to Sappington on account of the land, his representatives can recover the amount from the estate of Sappington, is precisely in accord with this Court's decision in *Green vs. Drummond,* 31 *Md.,* 71, to which the appellees particularly refer.

BARTOL, C. J., delivered the opinion of the Court.

This is a creditors' bill filed by the appellants for themselves, as well as for all other creditors of Francis Lawrence, deceased, for the purpose of subjecting his real estate to the payment of his debts. It is alleged in the bill, and appears from the proof that Lawrence had not the legal estate in the lands sought to be sold ; his title as alleged, was equitable only, acquired under a contract of purchase from Greenbury P. Sappington, who was made a party defendant. The bill alleged that Lawrence in his lifetime had contracted with Sappington for the land which is described, and had the possession of the same long before and at the time of his death, that he had paid the purchase money therefor, and was entitled to a deed of conveyance from Sappington. That they are advised the said land ought to be subjected to the payment of the debts of Lawrence, his personal estate being alleged to be insufficient.

The bill prayed a discovery from the defendant Sappington of the terms of the contract under and by which the intestate became possessed of the lands mentioned, what amount, if any, of the purchase money remained unpaid at the time of the intestate's death ; and further prayed that the lands be sold and the proceeds be applied

to the payment of the balance of the purchase money, if any remained unpaid, and the remainder be applied to the payment of the debts of the deceased.

Bannon, the administrator of Lawrence, and his widow, now the wife of John Sharp, together with her present husband, and Charles M. Lawrence the only child and heir-at-law of the deceased were made parties defendants. Sappington being summoned, answered the bill, but exceptions to his answer being filed it was ruled to be insufficient and he was required to answer further.

Afterwards, by leave of the Court, the appellants filed an amended and supplemental bill, on the 2nd day of October, 1874. Sappington died before making further answer, and his heirs-at-law have been made parties by a bill of revivor. Further proceedings were had which need not here be noticed particularly. Proof was taken chiefly for the purpose of establishing the alleged contract of purchase by Lawrence, and the cause being submitted, the Circuit Court was of opinion that there was a failure to make out a case entitling the complainants to a specific execution of the alleged contract; both for the want of certainty of averment, and because of a failure and insufficiency of proof, and dismissed the bill.

In this decision we think there was error.

The averments contained in the original and amended and supplemental bills, we think, are sufficient if supported by the proof, to entitle the appellants to relief.

The contract of purchase by Lawrence is distinctly charged, the lands which are the subject-matter of the contract are designated and described, and the possession of Lawrence under the contract, and his occupation thereof for a long period, and till the time of his death, as owner, with the knowledge and consent of Greenbury P. Sappington.

The only particulars in which there is a failure to state the terms of the contract of purchase, are that the price

at which the lands were purchased, and the amount of the purchase money actually paid are not fully stated.

Ordinarily in cases of application for specific performance, the bill is filed by the purchaser, or some person in privity with him having knowledge of the terms of the contract.

In such case, Courts of equity require that the terms of the contract shall be fully and particularly stated, so that it may appear to the Court, to possess all the elements of fairness, mutuality and certainty in all its parts, without which specific execution will not be decreed. But in this case the complainants are strangers to the contract, not having full and particular knowledge of its terms. They call on Sappington the vendor for discovery which is withheld. They ought not to be denied relief, because they have not set out in their bill fully and particularly all the terms of the contract, or alleged with certainty the amount of purchase money paid; especially where the only defects in the averments have been or may be supplied by the proof.

The evidence in the case, we think, clearly establishes the contract of purchase of the land in question by Lawrence.

This is proved by the admissions and declarations of Sappington, the vendor, testified to by the witnesses *Wheat, Pumphrey, Watts* and *Jones.* Their testimony on this point is uncontradicted; *Griffith* the only witness examined for the appellees also proves that there was a contract of sale. The testimony of these witnesses is confirmed by the two receipts of Sappington for a part of the purchase money for the land, and by the mortgage to Clark dated October 19th, 1864, conveying a part of the land; about thirty-one and a half acres, to secure a debt of $800, due from Sappington to the mortgagee. The mortgage was executed not only by Sappington and wife, but by Lawrence and wife also, who unite for the purpose of conveying their title and interest under the contract of purchase.

. There is no doubt or ambiguity in the evidence as to the particular parcel of land embraced in the contract, that is fully identified and described ; nor is their any doubt or question as to the possession of Lawrence, held under, and in part execution of the contract of purchase. The price to be paid for the land is also proved to be $2500, this is proved by the testimony of *Wheat* and of *Griffith* the witness of appellee. The witness *Pumphrey* say he *thinks* the price was $2600, but appears to have no distinct knowledge as to the price to be paid.

The only point on which the proof is defective, is as to whether the whole purchase money was paid by Lawrence or whether a part of it remains unpaid and if any, how much remains due. As to this the parties ought to be allowed to take further proof, and also for the purpose of establishing the insufficiency of the personal estate of Francis Lawrence to pay his debts, which has not been distinctly proved.

It appears by the exhibits filed with the answer of Sappington, that after the death of Francis Lawrence, viz., on the 19th day of December 1871, Messrs. Randall and Hagner as attorneys for Sappington sold the land, or a portion of it containing about seventy-five acres, to one *Joseph S. Clark* for $1100. The sale is evidenced by a contract in writing signed by the attorneys and by Clark, and it further appears that the land referred to in this contract is in Clark's possession. It is proper that Joseph S. Clark should be made a party to these proceedings, and the bill ought to be amended for that purpose, in order that it may be determined whether Clark is a *bona fide* purchaser without notice of Lawrence's equitable title, and what rights he, Clark, acquired under his said contract of purchase. No money has been paid by him, but if it should appear that he is a *bona fide* purchaser, his rights ought to be protected, and he ought to be allowed to pay the purchase money, which in that case would

stand in lieu of the land, and be applied under the order of the Court to the satisfaction of the debts of Francis Lawrence, after first satisfying the balance of purchase money, if any should be found to be due, from Francis Lawrence to Greenbury P. Sappington.

To the end that the bill may be amended as above suggested, further proof be taken, and further proceedings had, the case will be remanded under *section* 28, *Art.* 5 *of the Code,* without affirming or reversing the decree of the Circuit Court.

*Case remanded.*

(Decided June 19th, 1877.)